IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GARY K.[1],

           Plaintiff,

      v.

NANCY A. BERRYHILL,

Acting Commissioner of Social
Security,

           Defendant.

Case No. 1:17-cv-0452-PK

FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge:

Gary K. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This Court has jurisdiction over Plaintiff's action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). I have considered the parties' briefs and all evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision regarding DIB should be REVERSED and REMANDED for an award of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

1 – FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on October 6, 2015, alleging disability beginning October 15, 2013. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018. Following a denial of benefits, Plaintiff requested a hearing before an ALJ. On August 23, 2016, ALJ B. Hobbs held a hearing. Plaintiff was represented by counsel and testified; a Vocational Expert ("VE") and psychologist also testified. On October 21, 2016, the ALJ issued a decision finding Plaintiff not disabled and the Appeals Council subsequently denied Plaintiff's request for review. Plaintiff appealed the ALJ's decision and this action followed.

## DISABILITY ANALYSIS

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at

2 – FINDINGS AND RECOMMENDATION

140; *see also* 20 C.F.R. § 404.1520(a)(4)(i). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.152l(b) ; *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). Nevertheless, it is well established that "the step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*citing Bowen*, 482 U.S. at 153-54). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect' on an individual[']s ability to work." *Id.*, *quoting* Social Security Ruling ("SSR") 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

3 – FINDINGS AND RECOMMENDATION

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 404.1520(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[2] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 404.1545(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(a)(4)(iv), 404.1520(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the

---

[2] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR Lexis 5 (July 2, 1996).

4 – FINDINGS AND RECOMMENDATION

claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404,1520(g), 404.1560(c), 404.1566. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (*citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id. (quoting Reddick v. Chafer*, 157 F.3d 715, 720 (9th Cir. 1998)). The court may not substitute its judgment for that of the Commissioner. *See Id. (citing Robbins*, 466 F.3d at 882); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be

5 – FINDINGS AND RECOMMENDATION

"susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## BACKGROUND

Plaintiff was 51 years old on his alleged onset date of October 15, 2013. Tr. 28.[3] Plaintiff graduated high school and went on to obtain a bachelor's degree. Tr. 191. Prior to his alleged disability onset date, Plaintiff claims work as a pest control technician, general laborer in a hospital, and computer technician. Tr. 41-49. Plaintiff served in the armed forces from 1993 until 2007, and subsequently was rated 100 percent disabled by the Veteran's Administration ("VA"). Tr. 46-47. Plaintiff alleges that he is unable to work due to bipolar disorder; Post-Traumatic Stress Disorder ("PTSD"); depression; and degenerative disc disease. Tr. 190.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2013, the alleged onset date. Tr. 20.

---

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the Administrative Record filed herein as Docket No. 9.

6 – FINDINGS AND RECOMMENDATION

At the second step, the ALJ found that Plaintiff suffered from the following severe impairments: bipolar disorder, not otherwise specified; schizoaffective disorder, bipolar type; adjustment disorder; and obesity. Tr. 20. The ALJ found Plaintiff's sleep apnea; knee osteoarthritis; alcohol dependence; and cocaine dependence non-severe impairments. Tr. 20-21.

At the third step, the ALJ concluded that Plaintiff's impairments do not meet or equal the criteria for any condition in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr. 21-22. Because Plaintiff did not establish disability at step three, the ALJ continued to evaluate how Plaintiff's impairments affected his ability to work during the relevant period. The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of medium work. Tr. 22. The ALJ found that Plaintiff could:

> lift and carry 50 pounds occasionally and 25 pounds frequently. He could never climb ladders, ropes, or scaffolds. He could tolerate no exposure to workplace hazards, such as machinery and unprotected heights. He can understand, remember, and carry out only short and simple instructions. He can make only simple work-related judgements and decisions. He can have no more than occasional interactive contact with the public.

Tr. 22.

At the fourth step, the ALJ concluded that Plaintiff could not perform his past relevant work as a nuclear biological and chemical specialist; computer technician; alarm investigator; insecticide sprayer; or electronic equipment repairer. Tr. 28. At step five, the ALJ found Plaintiff could perform jobs existing in the national and local economy, including laundry laborer, box-maker/bender, and scrap sorter. Tr. 29. Accordingly, the ALJ found Plaintiff not disabled. Tr. 30.

## DISCUSSION

Plaintiff and the Commissioner agree that this case should be remanded. However, each party advances a different theory of remand, and disagrees as to whether the case should be remanded for additional proceedings or an immediate award of benefits. The Commissioner

7 – FINDINGS AND RECOMMENDATION

argues that the case should be remanded for further proceedings because mental health records from 2014 to 2015, including a consultative exam, are missing from the administrative record.[4] Plaintiff argues that after the Court grants proper weight to the medical opinion of treating physician Dr. William Peterson, M.D., Plaintiff will meet Listing 12.04 and, therefore, an immediate award of benefits is appropriate. The Court notes that the Commissioner did not advance any argument beyond requesting a remand for additional proceedings due to the absent records, and did not otherwise attempt to refute Plaintiff's arguments.

Plaintiff argues that the ALJ erred in analyzing the medical opinion of Dr. William Peterson, M.D. Disability opinions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (Treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066.

---

[4] The missing records were available to the state agency consultants at the beginning of the disability application process. However, the records went missing before the ALJ reviewed the record.

The opinion of a non-examining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n. 2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

On July 18, 2016 Plaintiff's treating psychiatrist, Dr. William Peterson, completed a check-the-box opinion diagnosing Plaintiff with bipolar disorder, PTSD, sleep apnea, moderate stress, and a GAF score of 40; he also noted that Plaintiff's medications caused mild drowsiness. Tr. 696. Dr. Peterson also found that Plaintiff's conditions resulted in anxiety, panic episodes, and manic and depressive episodes. Tr. 696. Dr. Peterson opined that Plaintiff was markedly limited in the ability to: carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination or proximity to others without being distracted by them, interact appropriately with the general public, and complete a normal workday without interruptions from psychologically based symptoms. Dr. Peterson also opined that Plaintiff exhibited a:

> [m]edically documented history of a chronic organic mental, schizophrenic, etc., or affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by mediation or psychosocial support and a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.

Tr. 696.

The ALJ gave little weight to Dr. Peterson's opinion because Plaintiff's appointment schedule was incongruous with the assessed degree of limitation; Dr. Peterson only met with Plaintiff every two to three months, yet he opined that Plaintiff suffered from disabling mental impairments. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may

9 – FINDINGS AND RECOMMENDATION

discredit a physician's opinion when it is incongruous with the physician's medical records). The ALJ's reasoning, however, is inapposite. The presence of cyclical disabling mental impairments does not necessitate frequent medical appointments, as Plaintiff's conditions are often dormant until triggered by an outside stressor. These manic or depressive episodes, or panic attacks, result in Plaintiff's functioning dramatically decreasing and, consequently, in an inability maintain normal daily activities. Indeed, on July 18, 2016, Dr. Peterson noted that Plaintiff had experienced a panic attack lasting for several hours, and remained anxious at the appointment. Tr. 700. Therefore, due to the cyclical and unpredictable nature of Plaintiff's impairments, an infrequent appointment schedule is not a legally sufficient reason to grant little weight to Dr. Peterson's opinion.

The ALJ also gave little weight to Dr. Peterson's opinion due to conflicts between Dr. Peterson's treating notes and his opinion. Tr. 26; *see Tommasetti*, 533 F.3d at 1041. The ALJ noted Dr. Peterson's records demonstrate that Plaintiff's mental status examinations were within normal limits and his impairments were "well-managed" by medication. Tr. 26. While Dr. Peterson described Plaintiff's conditions as "well-managed" with medication during his initial assessment, Plaintiff later endorsed panic attacks, anxious moods, and dissatisfaction with his medications. Tr. 661, 700-01. Indeed, throughout the record Plaintiff stated that he suffered from nightmares and distressing thoughts, depressive episodes, mood swings, manic phases, racing thoughts, panic attacks, anxiety, and grandiosity. Tr. 305, 659, 667-668. On February 12, 2016, Dr. Cathi Stegall noted that Plaintiff appeared at an appointment in a "hypomanic" episode, endorsing anxiety, racing thoughts, mood swings, sleeplessness, restlessness, reckless behavior, impaired focus, and forgetfulness. Tr. 671. At a consultative exam with Dr. Michael O'Connell, Ph.D. on August 30, 2016, Dr. O'Connell observed Plaintiff exhibiting "racing thoughts and

10 – FINDINGS AND RECOMMENDATION

flight of ideas which resulted in thought processes that were frequently tangential." Tr. 707. Dr. O'Connell also observed deficits in immediate recall and long-term memory, as well as pressured and rapid speech, hyper-religiosity, and physical restlessness. Tr. 707-08. Thus, Dr. Peterson's treatment notes, observed in context of the record as a whole, are supported by substantial evidence and do not conflict with his opinion.

To the extent the ALJ granted little weight to Dr. Peterson's opinion because it was delivered in a check-the-box form, such reasoning is unavailing, as Dr. Peterson's opinion is supported by the treatment records discussed above. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (a check-the-box opinion supported by "numerous records" should not be discredited merely because it was delivered in a check-the-box format).

Because Dr. Peterson's report is sufficient to make a finding of disability if credited as true, the Court declines to address Plaintiff's remaining arguments.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138–39 (9th Cir. 2011). (quoting *Benecke v. Barnhart* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

11 – FINDINGS AND RECOMMENDATION

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett*, 340 F.3d at 876 (citing *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The first element of the credit-as-true doctrine is met, as the ALJ erred in analyzing the opinion of Dr. Peterson. The second element is also met: the record is fully developed and free from ambiguities, conflicts, or gaps. The administrative record is also detailed and extensive, with hundreds of pages of medical records describing Plaintiff's impairments before and after the disability onset date. Physicians and psychologists opined as to Plaintiff's conditions and functionality. "Given this fully developed record, the admission of more evidence would not be "enlightening" and remand for the purpose of allowing the ALJ to have a mulligan [does not qualify] as a remand for a 'useful purpose." *Henderson v. Berryhill*, 691 Fed. Appx. 384, 386 (9th Cir. 2017) (citations omitted).

The Commissioner argues that step two of the three part credit-as-true rule precludes an immediate award of benefits to Plaintiff. The three steps of the credit-as-true rule are: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were

12 – FINDINGS AND RECOMMENDATION

such evidence credited. *Strauss*, 635 F.3d at 1138–39. The Commissioner posits that medical files missing from the administrative record necessitate a remand for additional proceedings in order for the ALJ to have an opportunity to review a complete record. The medical files at issue include a consultative exam from August 2014 and medical records from the El Paso VA health care system. Tr. 75-77. The Commissioner cites *Dominguez* and *Treichler* for the proposition that "[t]he second step of the [credit-as-true] test is not satisfied if there are any evidentiary conflicts, gaps, or ambiguities in the record." Def's Br. 5; *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105-06 (9th Cir. 2014). The Court concludes, however, that the Commissioner reads the second step of the credit-as-true rule too narrowly.

"The decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). The court should remand for additional proceedings when there are outstanding issues that must be resolved. *Strauss*, 635 F.3d at 1138. Thus, the question is not whether there are *any* evidentiary conflicts, gaps, or ambiguities in the record, but instead whether those conflicts, gaps, or ambiguities affect the ultimate disability decision. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (an award of benefits is appropriate where "the record has been fully developed and further administrative proceedings would serve no useful purpose").

The Court holds that, on this record, the unaccounted for documents do not affect the ultimate disability decision because the state agency reviewing physicians summarized the missing medical records. Tr. 75-77. The summaries demonstrate Plaintiff exhibited "extremely" low attention and concentration, moderately impaired ability to reason, moderately impaired ability to make occupational, personal, and social adjustments, and low GAF scores. Tr. 76-77.

13 – FINDINGS AND RECOMMENDATION

These findings are generally consistent with the record as a whole and do not warrant remand for additional proceedings, as the ALJ had the opportunity to review the summaries when he made his decision.

The Commissioner notes that a similar case in this district came to the opposite conclusion. *See Pedro v. Berryhill*, WL 4872364 (D. Or. 2017). In *Pedro*, however, the missing treatment records were not summarized by the state agency consultants, depriving the ALJ and the Court the opportunity to review them in the context of the record as a whole. Additionally, the treatment records were directly relevant to assessing the opinion of the plaintiff's treating counselor. The plaintiff's counselor submitted a letter in support of her disability application, but did not provide her treatment records. *Id.* at *2. The Commissioner successfully argued that the missing treatment notes required a remand for additional proceedings to assess the consistency of the opinion with the missing records. *Id.* at *3. Here, no such comparison is necessary because the summarized treatment notes were available to the ALJ.

Moreover, the Court is leery of remanding this case for additional proceedings when the Commissioner is responsible for the record and, consequently, responsible for losing the medical records. It would be manifestly unjust to delay an award of benefits purely through an error of the Commissioner's own making. Therefore, the Commissioner's argument is inapposite.

When Dr. Peterson's opinion is fully credited, Plaintiff must be found disabled. Listing 12.04C(2) states that a:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.

14 – FINDINGS AND RECOMMENDATION

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04C(2). Dr. Peterson opined that Plaintiff met the requirements of Listing 12.04C(2), and the record supports Dr. Peterson's assessment. Therefore, Plaintiff meets the third element of the credit-as-true doctrine, and delaying "the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage- financial, medical and emotional." *Garrison*, 759 F.3d at 1019. Because the Court does not find any outstanding issues remaining, the Court utilizes its discretion to remand this case for an immediate award of benefits. *See Connett*, 340 F.3d at 876.

## RECOMMENDATION

Based on the foregoing, the Commissioner's decision denying Plaintiff's application for DIB should be REVERSED and REMANDED for an immediate award of benefits.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day of June, 2018.

Honorable Paul J. Papak
United States Magistrate Judge

15 – FINDINGS AND RECOMMENDATION